**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **V & S APPLESEED, LLC**<br>11150 Red Run Blvd.<br>Suite 320<br>Owings Mills, MD 21117<br><br>and<br><br>**V & S TSP, LLC**<br>11150 Red Run Blvd.<br>Suite 32o<br>Owings Mills, MD 21117,<br><br>      Plaintiffs<br><br>**KANTA REALTY, LLC**<br>3 Cove Meadow Lane<br>Oyster Bay, NY 11771,<br>      Defendant | Case No.<br>Judge<br>Magistrate Judge |

## COMPLAINT FOR MONEY DAMAGES

Now comes Plaintiffs, V&S APPLESEED, LLC and V&S TSP, LLC, and state the following as their Complaint:

THE PARTIES/JURISDICTION AND VENUE:

1. Plaintiff, V & S Appleseed, LLC, is an Ohio limited liability company that formerly owned, operated, and managed a retail shopping center known as Johnny Appleseed Shopping Center, which is located at 1478 Lexington Avenue in Mansfield, Richland County, Ohio ("Johnny Appleseed").

2. Plaintiff, V & S TSP, LLC, is an Ohio limited liability company that formerly owned two parcels of real property adjacent to Johnny Appleseed (the "Adjacent Parcels"). For

all times hereinafter mentioned, V&S Appleseed, LLC and V&S TSP, LLC may be collectively referred to as "V&S".

3. Defendant Kanta Realty, LLC is, upon information and belief, a New York limited liability company that maintains its principal place of business in the State of New York ("Kanta"). Kanta is not licensed to conduct business in the State of Ohio.

4. This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §1332(a), as the amount in controversy is in excess of $75,000.00.

5. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. §1391(b)(2) and also pursuant to the provisions of Section 13.2 of the Purchase Agreement between the parties (the "Purchase Contract") that is the subject of this litigation, as described in paragraph 20 below.

FACTS COMMON TO ALL COUNTS:

6. In June 2022, V & S offered Johnny Appleseed and the Adjacent Parcels for sale in an auction that was conducted by Ten-X, LLC as auctioneer ("Ten-X"). In order to participate in the auction, participants were required to be bound by Ten-X's Participation Terms, a true and correct copy of which is attached hereto as Exhibit A and made a part hereof (the "Participation Terms").

7. Section 2 of the Participation Terms provides in pertinent part:

> Purchase Documents. Prior to submitting an Offer, Participants must review the purchase and sale of agreement, any applicable addenda, Seller's disclosure documentation, and all other transaction documents (collectively "**Purchase Documents**"), which can be accessed on the Property Page. All Offers must be based on the posted Purchase Documents. The Purchase Documents are non-negotiable.
>
> Due Diligence. It is each Participant's responsibility to conduct its own due diligence and investigate all matters relating to each Property that Participant is interested in purchasing, including, without limitation, legal matters, physical condition and attributes, environmental matters, economic matters, encumbrances, and all other aspects. Participant must coordinate any such inspection with Seller

or Seller's broker. Participants must submit Offers at their own risk regardless of whether Participant has physically inspected the Property. All offers should be based solely on Participant's independent due diligence and any information contained in the Purchase Documents. (emphasis in original)

8. Section 3 of the Participation Terms provides in pertinent part:

<u>Irrevocability of Offers.</u> All Offers submitted during any Event are irrevocable, except where an Offer withdrawal option is expressly made available to Participants through the Website.

<u>Signing Purchase Documents.</u> The final Purchase Documents will be emailed to Winning Buyer for electronic signature using the email address associated with Winning Buyer's Website account. Winning Buyer must sign the Purchase Documents within two hours after they are sent to Winning Buyer (unless a longer time frame is specified in writing by Ten-X), time being of the essence. If Winning Buyer fails to timely sign the Purchase Documents, (a) Ten-X may declare Winning Buyer to be in default of these Terms, (b) Seller may reject Winning Buyer's Offer, and/or (c) Seller may declare Winning Buyer to be in default of the Purchase Documents and pursue claims against winning buyer for specific performance, payment of the "Earnest Money Deposit" (defined below) and all other remedies available at law; Seller is an express, intended, third-party beneficiary of the foregoing clauses (b) and (c).

<u>Payment of Earnest Money Deposit.</u> The Purchase Documents for each Property require Winning Buyer to pay a deposit to the escrow/closing agent ("**Earnest Money Deposit**"). The amount of the Earnest Money Deposit is specified in the Purchase Documents or the Property Page for each Property. Unless otherwise specified in the Purchase Documents, the Earnest Money Deposit must be received no later than 5:00 PM in the time zone where the Property is located on the first business day after Winning Buyer is notified that Seller has countersigned the Purchase Documents, time being of the essence. If the Earnest Money Deposit is not timely received, Ten-X or Seller may declare Winning Buyer to be in default of these Terms and Seller may reject Winning Buyer's offer.

9. Kanta registered to participate in the Johnny Appleseed auction and accordingly agreed to be bound by the terms and provisions of the Participation Terms.

10. Kanta won the auction for Johnny Appleseed and the Adjacent Parcels with its bid of $3,900,000.00, plus a transaction fee to be paid to Ten-X of $97,500.00, for a total purchase price of $3,997,500.00.

11. Thereafter, on or about June 8, 2022, V & S and Kanta memorialized the auction results into a written Purchase Contract (the "Purchase Contract"). Therein, V & S agreed to sell, and Kanta agreed to purchase, Johnny Appleseed and the Adjacent Parcels for the sum of $3,997,500.00. A true and correct copy of the fully executed Purchase Contract is attached hereto as Exhibit B and made a part hereof.

12. Section 3.1 of the Purchase Contract provides:

Purchase Price. The aggregate purchase price for the property ("**Purchase Price**") shall be Three Million Nine Hundred Ninety Seven Thousand Five Hundred Dollars ($3,997,500.00)(*which equals Purchaser's offer price of $3,900,000.00 plus a Ten-X Transaction Fee of $97,500.00*). The Purchase Price is subject to adjustments and prorations as set forth below and in Section 5. (emphasis in original)

13. Section 3.2.1 of the Purchase Contract provides:

On or before 5:00 pm on the first (1st) business day after Sellers sign this Agreement, Purchaser shall deposit Three Hundred Ninety Nine Thousand Seven Hundred Fifty Dollars ($399,750.00)(the "**Deposit**")(*which equals 10% of the Purchase Price*) with Commercial Settlement Services, LLC (the "**Escrow Agent/Title Company**"). The deposit shall be non-refundable and held by the Escrow Agent in a non-interest bearing account and paid according to the terms hereof. (emphasis in original)

14. Pursuant to the provisions of the Purchase Contract, said Deposit was to be paid to the Escrow Agent via wire transfer.

15. Section 7.1 of the Purchase Contract provides:

Enforceability; Authorization. This Agreement and the documents, affidavits, certificates and other instruments to be executed and delivered by the applicable Seller pursuant hereto are, or will be when executed and delivered by the applicable Seller, will be legal, valid and binding obligations of Sellers and enforceable against Sellers in accordance with their terms. Sellers have obtained all consents necessary for, and possesses full authority and legal right to authorize Sellers' entry into and performance of this Agreement, the documents, affidavits, certificates and other instruments to be executed and delivered by Seller pursuant hereto and/or the transactions contemplated hereby or thereby.

16. Section 10.2 of the Purchase Contract provides:

<u>Breach by Purchaser.</u> If Purchaser shall fail to perform any of the covenants or agreements to be performed by it hereunder and such failure shall continue for five (5) days after written notice from Sellers, or of any of Purchaser's representations and warranties set forth herein shall not be true and correct in all material respects as of the date made or deemed made, Sellers' sole and exclusive remedy shall be to terminate this Agreement and receive the entire Deposit as liquidated damages for Purchaser's default (Escrow Agent to pay the Deposit to Seller upon Seller's request), all other claims for losses, damages, costs and expenses being waived hereby (except for Purchaser's obligations under sections 6.1, 6.4 and 11). Purchaser and Sellers hereby acknowledge and agree that the actual damages suffered by Sellers as a result of such breach by Purchaser would be impracticable, extremely difficult or impossible to determine and the parties agree that the amount of the Deposit shall be the amount of damages to which Sellers are entitled in such event and that the amount of such liquidated damages is reasonable and does not constitute a penalty.

17. Section 10.3 of the Purchase Contract provides:

<u>Litigation Costs.</u> In the event of any litigation between the parties with respect to this Agreement, including any action for specific performance of may be brought by Purchaser as provided above, the prevailing party shall be entitled to recover reasonable attorney's fees and expenses.

18. Section 13.2 of the Purchase Contract provides:

<u>Governing Law; Venue.</u> The provisions of this agreement shall be governed by the laws of the State of Ohio, without regard to the conflicts of laws provisions thereof. Any suit involving any dispute or matter arising under this agreement may only be brought [in] the State or Federal Court of appropriate jurisdiction for Columbus, Ohio, provided, that if any such action or proceeding arises under the Constitution, laws or treaties of the United States of America, or if there is there is a diversity of citizenship between the parties thereto so that it is brought in the United States District Court, it may be brought in the United States District Court for the Southern District of Ohio. All of the parties hereto hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

19. Section 13.11 of the Purchase Contract expressly states that time is of the essence with respect to the performance of said Purchase Contract.

20. Section 13.13 of the Purchase Contract provides:

<u>Waiver of Trial by Jury.</u> THE PARTIES HERETO HEREBY AGREE TO WAIVE ANY RIGHTS THEY MIGHT OTHERWISE HAVE TO A TRIAL BY JURY UNDER ANY PROVISION OF ANY APPLICABLE LAW.

21. Per the express language of Section 3 of the Participation Terms, the offer to purchase Johnny Appleseed and the Adjacent Parcels made by Kanta was non-rescindable and became permanent and binding upon the execution of the Purchase Contract.

22. Kanta failed to pay the Deposit in a timely manner, as required by Section 3.2.1 of the Purchase Contract.

23. To date, said Deposit has never been paid by Kanta, meaning that Kanta has materially breached the terms and provisions of the Purchase Contract.

24. On June 15, 2022, V & S provided Kanta with its first notice that it had breached the contract for failure to pay the Deposit, in a document titled Notice to Winning Buyer of Breach and Termination, a true and correct copy of which is attached hereto as Exhibit C and made a part hereof (the "First Notice").

25. On June 15, 2022, V & S sent Kanta a second Notice to Winning Buyer of Breach and Termination resulting from Kanta's failure to pay the Deposit, a true and correct copy of which is attached hereto as Exhibit D and made a part hereof (the "Second Notice").

26. Section 2 of the Second Notice provides:

**NOTICE OF TERMINATION.** As a result of such breach, any right Winning Buyer may have otherwise had to purchase the Property is hereby terminated pursuant to the Participation Terms or the Purchase Documents, as applicable, and the Property may be immediately sold to another buyer or placed in another Event. In addition, if the Purchase Documents were fully-executed, than the Purchase Documents are hereby terminated.

27. V & S had no choice but to terminate the Purchase Contract due to Kanta's breach of the contract.

28. As a result of Kanta's breach of the Purchase Contract, the entire deposit became due and owing to V&S as liquidated damages in accordance with Section 10.2 of the Purchase Contract.

29. On September 19, 2022, V & S's corporate counsel sent a letter to the owner of Kanta, Sanjeev Chadha, demanding payment of the entire Deposit within five days of the date of the letter. See Exhibit E, attached hereto and made a part hereof.

30. Despite demand, Kanta has failed and refused to pay the Deposit, and remains in material breach of the terms and provisions of the Purchase Contract.

31. Johnny Appleseed and the Adjacent Parcels were ultimately sold to another purchaser.

COUNT ONE: BREACH OF CONTRACT

32. V & S realleges the allegations set forth in paragraphs 1 through 35 as if fully rewritten herein.

33. The parties freely and voluntarily entered into an arm's length Purchase Contract, including Kanta's agreement to pay the non-refundable Deposit of $399,750.00.

34. Kanta materially breached the Purchase Contract by failing and refusing to pay the Deposit.

35. V & S terminated the Purchase Contract as a consequence of Kanta's material breach of the terms and provisions.

36. Per the express language of the Participation Terms and Section 10.2 of the Purchase Contract, the parties specifically agreed that, in the event of a breach of the Purchase Contract by Kanta, V & S is entitled to liquidated damages in the amount of the Deposit, or $399,750.00.

37. As a result of the material breach of the Purchase Contract by Kanta, V & S has suffered, and continues to suffer, damages in the amount of $399,750.00.

COUNT TWO: ACCOUNT STATED

38. V & S realleges the allegations set forth in paragraphs 1 through 41 as if fully rewritten herein.

39. Kanta owes V & S $399,750.00 according to the account hereto annexed as Exhibit F.

COUNT THREE: COSTS AND EXPENSES/ATTORNEY'S FEES

40. V & S realleges the allegations set forth in paragraphs 1 through 43 as if fully rewritten herein.

41. Per the terms and provisions of Section 10.3 of the Purchase Contract, V & S is also entitled to an award of its costs and expenses incurred herein, including its reasonable attorney's fees incurred.

WHEREFORE, V & S demands that judgment be entered in its favor in the amount of $399,750.00, plus interest accruing at the legal rate since June 8, 2022, along with an award of its costs and expenses incurred herein, including an award of its reasonable attorney's fees incurred per the express language of Section 10.3 of the Purchase Contract, along with such other relief as the Court deems just and appropriate.

Respectfully submitted,

COOK, SLADOJE & WITTENBERG CO., L.P.A.

/s/Eric J. Wittenberg
Eric J. Wittenberg (0038709)
5131 Post Road
Suite 100
Dublin, OH 43017
(614) 230-0670
Fax: (614) 221-5777
eric@cswcolpa.com
Trial Attorney for Plaintiff

OF COUNSEL:

Joshua S. Nagy (0097099)
COOK, SLADOJE & WITTENBERG CO., L.P.A.
5131 Post Road
Suite 100
Dublin, OH 43017
(614) 230-0670
Fax: (614) 221-5777
jnagy@cswcolpa.com
Co-counsel for Plaintiff